OTTO OLSON, APPELLEE, V. RALPH F. LILLEY ET AL.,
APPELLANTS.

2 N. W. (2d) 15

FILED JANUARY 16, 1942.   No. 31292.

*Brown, Crossman, West, Barton & Fitch* and *Abbott,
Dunlap & Abbott,* for appellants.

*Robins & Yost, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an appeal from a verdict and judgment in favor
of plaintiff, for personal injuries suffered in an automobile
collision at an intersection. The physical facts with refer-
ence to the place of the accident, briefly summarized, are
as follows:

Broad street is a wide paved highway, running north and
south through the center of the city of Fremont, Nebraska.
Washington street runs east and west, intersecting Broad

street in the south part of the city. Washington street east of Broad is an oil mat, and west thereof a narrow graveled road. Highway No. 77 enters Fremont on the north and continues south through Broad street as far as Washington, the intersection where this accident occurred, then proceeds east on Washington two blocks to Main street and south out of Fremont.

Both cars involved in the accident were on main highway No. 77, approaching the intersection of Broad and Washington streets. Defendant Minard was driving the car of defendant Lilley south on Broad street, approaching the intersection from the north. Plaintiff was driving his Model T Ford west on Washington street, approaching such intersection. On the west side of Broad street between the paving and the sidewalk line and north of Washington street were certain highway signs: 88 feet north of Washington, a U. S. 77 sign, with an arrow pointing toward the east; 160 feet north of Washington, a "curve" sign, pointing east; 206 feet north of Washington, a speed limit sign of 25 miles an hour; 238 feet north of Washington, a "slow" sign on the west side of the south approach to the viaduct, which is north of Jackson street. Jackson street is the first street north of Washington, and about half-way up the approach of Jackson is another "slow" sign. One hundred and twenty feet east of the east line of Broad street, on the north shoulder of Washington, is a U. S. 77 sign. On exhibit B is placed an "x" near a picture of a tree, denoting the position of the plaintiff when he looked to the north and observed defendant Lilley's car 250 feet distant. This point is 66 feet east of the west edge of the Broad street pavement.

The first assignment of error is the admission of testimony of the witnesses Garrison and McIntosh with reference to the speed of defendant Lilley's car, on the ground that such evidence is incompetent.

The witness, Mrs. Garrison, testified she had ridden in and driven automobiles and was competent to judge the speed thereof. She lives on the northwest corner of the

intersection, facing Broad street, the front porch of her residence being approximately 50 feet west of the west line of Broad street. She was sitting on the north end of a davenport in her home, its back being against the window, and she was facing southeast. Defendants' contention is that she was looking down the highway, her back toward the north, or the viaduct, and therefore did not see defendant Minard coming from the north; consequently she had no reasonable opportunity, time, place or means to formulate an opinion as to the speed of the Lilley car; all she saw was a "flash." The record shows that this witness saw the Lilley car as it passed her window 50 feet north of the intersection down to the point of the collision, which occurred in the southwest quadrant of the intersection. She testified the Lilley car was traveling 50 miles an hour or better.

The witness McIntosh was standing approximately one and a half blocks north of the scene of the accident. He testified, as a guess, that six seconds elapsed from the time the Lilley car passed him until he heard the crash. When this witness arrived at the scene of the accident, the Lilley car was 75 to 100 feet south of the place of collision.

Defendants cite the cases of *Bergendahl v. Rabeler,* 133 Neb. 699, 276 N. W. 673; *Knoche v. Pease Grain & Seed Co.,* 134 Neb. 130, 277 N. W. 798; and *Mierendorf v. Saalfeld,* 138 Neb. 876, 295 N. W. 901.

In *Bergendahl v. Rabeler, supra,* this court held: "Where it appears that a witness had no reasonable time, means, distance or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject."

On this question of speed, it is well settled that "A person of ordinary intelligence, having opportunity for observation, is competent to testify as to the speed at which an automobile was being operated at a given time." 3 Jones, Commentaries on Evidence (2d ed.) 2329, sec. 1264.

"Speed of an automobile is not a matter of exclusive ex-

pert knowledge or skill, but any one with a knowledge of time and distance is a competent witness to give an estimate. The opportunity and extent of his observation goes to the weight of the testimony." *Patterson v. Kerr,* 127 Neb. 73, 254 N. W. 704; *Serratore v. Miller,* 130 Neb. 908, 267 N. W. 159.

Under the circumstances in the instant case, the witnesses Garrison and McIntosh had reasonable time, means, distance and opportunity to formulate a basis for their opinion of the speed of defendant Lilley's car. The weight and credibility of their testimony are for the jury.

Defendants contend that the Lilley car entered the intersection first; this fact, coupled with the physical fact that the accident occurred in the southwest quadrant of the intersection, indicating defendant Minard drove at all times on his right side of the road. However, according to defendant Minard's testimony, the front end of his car was 12 feet north of the north edge of Washington street when he started to shift gears, which was after he saw plaintiff's car west of the east walk. This would place the plaintiff's car in the intersection first.

Section 39-1148, Comp. St. Supp. 1939, provides in part: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right." See *Plotkin v. Checker Cab Co.,* 133 Neb. 1, 274 N. W. 198. In the instant case, defendant Lilley's car was to the right of the plaintiff's car, and plaintiff under the statute, was required to yield the right of way.

When the plaintiff arrived at the east edge of the sidewalk which crosses Washington street, he looked to the north and saw a car coming 250 feet north of the intersection of Broad and Washington streets. There is no dispute that both motorists were traveling on their own right side of the highway. Plaintiff at that time was 60 feet distant from the point where the cars came together. He was driving 15 miles an hour; he did not apply his brakes or slacken his speed. The speed to be observed by the driver

Minard was 25 miles an hour. Defendant saw the plaintiff when he was 150 feet from the intersection. Mrs. Garrison testified that plaintiff's car was half-way through the intersection at the time the Lilley car went by the window of her home. Plaintiff testified he was two-thirds through the intersection and proceeding straight west before defendant Minard entered the intersection. As he came into the intersection and approached plaintiff's car, the Lilley car swerved a little to the west, which permitted the front end of the car to pass directly in front of the plaintiff's car, which turned over and came to a stop in the southwest corner of the intersection. The Lilley car proceeded into a yard south and west of the intersection, and then back onto the street for at least 150 feet before coming to a stop. Under the circumstances, plaintiff could hardly have looked to the north at any later time and still have had time to look to the south and west.

It will be observed that which car entered the intersection first is a controverted issue of fact. In a situation such as in the present case, the question of negligence and contributory negligence, when reasonable minds may draw different conclusions, is for the jury. *Parks v. Metz, ante,* p. 235, 299 N. W. 643.

In cases where a driver has been held to be negligent for failure to keep a proper lookout at an intersection, the driver looked only when at some distance from the intersection, and then failed to look further as he approached, arrived at, or was about to enter, the intersection. As has been explained, such is not the situation that existed at the time of the accident in the instant case.

Other assignments of error are without merit and need not be discussed.

AFFIRMED.